IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WILLIE TATE,** | |
| *Plaintiff*, | |
| v. | Case No. 1:23-CV-03358-JRR |
| **MICHELLE KING[1], Acting Comm'r Social Security Administration,** | |
| *Defendant.* | |

**MEMORANDUM OPINION**

Pending before the court is Defendant's Motion for Summary Judgment. (ECF No. 14, the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

**I.     BACKGROUND**

This action arises from Plaintiff's employment for, and termination from, the Social Security Administration ("SSA"). Except where noted, the following facts are undisputed.

**A.  Plaintiff's Employment at SSA**

Plaintiff began working as a Utility Service Repair Operator ("USRO") for the SSA on August 19, 2018. (ECF No. 14-1 at p. 128.) As a USRO, his responsibilities included providing maintenance service to the SSA headquarters building. *Id.* Plaintiff's employment was subject to a one-year probationary period during which his managers could terminate his employment for unacceptable conduct or performance. *Id.* Plaintiff's managers were Ricky Cassell, William Hook, and Earl Boehl. *Id.* at pp. 172, 174.

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute Michelle King for Kilolo Kijakazi as the defendant in this action.

Five months into Plaintiff's employment, on January 10, 2019, Bonneva Ezekiel, Director of Headquarters SSA Child Care Center, allegedly saw Plaintiff sitting in the Child Care Center breakroom. (ECF No. 14-1 at p. 128.) Ms. Ezekiel told Plaintiff he was not allowed to take a break in the Child Care Center breakroom, as use of that room is for Child Care Center staff only. *Id*. Later that same week, on January 16, 2019, another SSA employee, Carlos Lacy, allegedly observed Plaintiff lying down and sleeping in the Child Care Center breakroom. *Id*. Mr. Lacy asked Plaintiff why he was in the breakroom; Plaintiff responded that his feet hurt and he could take a break wherever he wanted. *Id*. Plaintiff claims he never took a break or slept in the Child Care Center breakroom and that he never slept on the job during his employment for SSA. *Id*. at p. 131; ECF No. 1 ¶ 24.

Mr. Cassell terminated Plaintiff's employment with the SSA on March 5, 2019, for unacceptable conduct and lack of judgment demonstrated by taking two breaks in the Child Care Center breakroom, including a second break after he was informed he could not use the breakroom. (ECF No. 14-1 at p. 128.)

### B. Plaintiff's Discrimination Claim

On May 1, 2019, Plaintiff filed a Formal EEO Complaint of Discrimination. (ECF No. 14-1 at p. 27.) Therein, Plaintiff, a Black man, alleged the SSA discriminated against him. *Id*. at p. 48. Plaintiff alleged three White SSA USROs, Eric Purdy, Joseph Smelgus, and Eric Rockwell, were discovered sleeping on the job and were not fired. *Id*. at p. 18. The SSA conducted an investigation into Plaintiff's claim. *Id*. at p. 9. Plaintiff subsequently requested a hearing on his complaint before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge. (ECF No. 14-2 at p. 1.) Before the EEOC, the parties exchanged paper discovery and depositions were taken of Ms. Ezekiel, Mr. Lacy, and Plaintiff. *Id*. at p. 18–321. At the close of

discovery, the SSA moved for summary judgment. *Id*. at p. 322. On September 26, 2022, the Administrative Judge found that Plaintiff "failed to establish a *prima facie* case of race discrimination and failed to produce sufficient evidence to demonstrate a genuine issue of material fact that the Agency discriminated against him on the basis of his race and cannot otherwise show pretext;" therefore, summary judgment was granted in favor of the SSA. (ECF No. 14-7 at p. 270.) Plaintiff timely appealed. (ECF No. 14-4 at p. 9.) After more than 180 days passed without a decision on his appeal, Plaintiff initiated the instant action. (ECF No. 1 ¶ 51.) *See* 29 C.F.R. § 1614.407(d) (authorizing a plaintiff to file a Title VII civil action in federal district court after 180 days from the date of filing an appeal with the Commission if there has been no final decision.).

### C. Procedural History

On December 11, 2023, Plaintiff filed the Complaint containing a single claim for relief for violation of Title VII. (ECF No. 1.) On May 17, 2024, before discovery had commenced, Defendant moved for summary judgment. (ECF No. 14.) In response, through a Federal Rule of Civil Procedure 56(d) affidavit, Plaintiff argues summary judgment is premature and otherwise opposes the Motion. (ECF No. 17.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

### III.   ANALYSIS

Defendant moves for summary judgment on Plaintiff's single Title VII claim. (ECF No. 14). Plaintiff alleges he "was treated less favorably than his white co-workers with respect to the

terms and conditions of his employment because of race" and "was wrongfully terminated" in violation of Title VII. (Complaint, ECF 1 ¶¶ 57, 58.)

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). "To satisfy ordinary principles of proof, [a plaintiff] must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996). "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 175 (4th Cir. 2020) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)).

Absent direct evidence, as is the case here, a plaintiff must establish a *prima facie* case pursuant to the *McDonnell Douglas* standard. *McDonnell Douglas Corp.*, 411 U.S. at 802. Under the *McDonnell Douglas* standard, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dep't of Cnty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254. "To

establish a 'presumption' is to say that a finding of the predicate fact (here, the *prima facie* case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citations omitted).

"[T]he elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [the employment action]." *McDonnell Douglas Corp.*, 411 U.S. at 802. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 254–55). "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citations omitted). "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hicks*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 253).

"An employer is entitled to summary judgment if the plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995). Further, "the mere existence of a scintilla of evidence in support of the plaintiff's

6

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 943 (4th Cir. 1992)).

Plaintiff, by way of a Rule 56(d) affidavit of his attorney, Joseph Creed, submits summary judgment in this matter is premature, as the parties have not engaged in discovery. (ECF No. 17-1). Plaintiff avers he cannot adequately oppose the Motion without discovery. *Id.* ¶ 10. In the Fourth Circuit,

> [R]elief under Rule 56(d) should be 'liberally granted to protect nonmoving parties from premature summary judgment motions.' *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014) (internal quotation marks omitted). [The Fourth Circuit has] even mandated that courts in this Circuit refuse to consider the motion where the nonmoving party has not had an opportunity to obtain evidence necessary to support its position. *See Harrods Ltd. V. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).

*Boyle v. Azzari*, 107 F.4th 298, 301–302 (4th Cir. 2024).

> Generally, summary judgment must be "refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods*, 302 F.3d at 244 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). But a nonmoving party "cannot complain that summary judgment was granted without discovery unless that party . . . attempt[ed] to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (citing *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).
>
> A nonmovant presents such opposition in the form of a Rule 56(d) affidavit, stating that he "cannot present facts essential to [his] opposition." FED. R. CIV. P. 56(d). Although this Court places great weight on the requirement of a Rule 56(d) affidavit, *see Harrods*, 302 F.3d at 244, even in the affidavit's absence, a district court abuses its discretion by granting summary judgment when it otherwise has "fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record." [*Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)] (citing *Harrods*, 302 F.3d at 244–45).

*Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (footnote omitted).

Through his attorney's 56(d) affidavit, Plaintiff urges that the SSA's internal investigation and the EEOC administrative record is "a limited record and is insufficient to enable [him] to fully respond to the SSA's motion." (ECF No. 17-1 ¶ 4.) Specifically, Plaintiff insists he cannot fully respond to the Motion because he has not had the opportunity to depose Ricky Cassell, William Hook, Earl Boehl, and Kelly Barr, the managers who made the decision to terminate Plaintiff's employment. *Id.* at ¶ 5. Plaintiff additionally seeks discovery regarding the facts and circumstances of the proposed comparators' (Mr. Purdy, Mr. Smelgus, and Mr. Rockwell) alleged instances of sleeping on the job. *Id.* at ¶ 6.

"This court has long held that parties wishing to obtain additional discovery must 'specifically allege why the information sought would have been sufficient to create a genuine issue of material fact such that it would have defeated summary judgment.'" *Works v. Colvin*, 519 F. App'x 176, 183 (4th Cir. 2013) (quoting *Strag v. Bd. of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995)). Defendant insists Plaintiff has not met this burden as none of the information Plaintiff seeks in discovery could create a genuine issue of material fact. (ECF No. 20 at p. 1–2.) The court disagrees.

Plaintiff specifically identifies contradictions and inconsistencies in the managers' statements. (ECF No. 17 at p. 11.) "A plaintiff may demonstrate pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fordyce v. Prince George's Cnty.* 43 F. Supp. 3d 537, 550 (D. Md. 2014) (internal quotations omitted). By deposing his former managers (for the first time), Plaintiff reasonably anticipates that he may be able to develop evidence to generate a question of pretext – which is to say, a dispute of fact as to whether inconsistencies in the managers' stated reasons for

termination demonstrate that Plaintiff's termination was a pretext for unlawful discrimination. Such evidence, were it developed, would, at the very least, generate a genuine dispute of material fact for resolution by the factfinder as to witness credibility.

In other Title VII discrimination cases, this court has found pre-discovery summary judgment premature even when "the administrative record contains voluminous documentation of plaintiff's claims of discrimination, the steps the Department took to address [plaintiff's] claims, the resolution of [plaintiff's] claims at the agency level, and affidavits from those [accused] of misconduct" because "without depositions, at which plaintiff can cross-examine those she accuses of sex discrimination and retaliation, plaintiff has no means of ferreting out inconsistencies or falsehoods in the statements of her alleged harassers." *Hart v. Lew*, 973 F. Supp. 2d 561, 573–74 (D. Md. 2013); *Battle v. Burwell*, No. PWG-14-2250, 2016 WL 4993294, at *18 (D. Md. Sept. 19, 2016); *see also McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014) (finding plaintiff's 56(d) affidavit "succeeds with ease" because "at the time of the summary judgment motion, [plaintiff] had not had the opportunity to depose [her] supervisors."); *Works*, 519 F. App'x at 183 (finding "because certain key players in this matter—employees of the SSA—did not testify at the administrative hearing and were not deposed at that level or at the district court level, there is a 'real possibility that [plaintiff] was prejudiced by the denial' of her discovery request" (quoting *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)); *Rosinbum v. Azar*, No. CV TDC-19-3119, 2020 WL 6545853, at *6 (D. Md. Nov. 6, 2020) (holding that "despite the fact that the FDA managers and supervisors central to her case provided affidavits during the administrative investigation, none have been deposed, so Rosinbum has not yet had any opportunity to test the credibility, motivations, or mindsets or key witnesses . . . in an adversarial setting.").

Through discovery, Plaintiff additionally seeks information about the similarity between his own alleged infractions and those of his proposed comparators. (ECF No. 17-1 ¶ 6.) Plaintiff requires information about warnings they received and the circumstances of their alleged instances of sleeping on the job in support of his claim that a) his managers' stated reasons for termination were pretextual, and b) to generate evidence that he was treated more harshly than other similarly situated employees, and ultimately terminated, because of his race. (ECF No. 17 at p. 12.) Employment records regarding the proposed comparators were not available in the administrative process and are in the SSA's control. (ECF No. 17-6 ¶ 6.) *See McCray*, 741 F.3d at 484 (noting "as we have emphasized, 56(d) motions for more time to conduct discovery are proper in cases such as this one, where the main issue is one of motive and where most of the key evidence lies in the control of the moving party"); *Ryan v. Wolf*, No. CV ELH-19-1968, 2021 WL 409747, at *8 (D. Md. Feb. 5, 2021) (declining to convert motion to dismiss into one for summary judgment and finding discovery warranted where evidence plaintiff needed to show that she was fired because for discriminatory reasons was in the control of defendant employer).

Here, the non-adversarial administrative record does not provide a sufficient basis for a summary judgment ruling. *Battle*, 2016 WL 4993294 at *18 (citing *Hart*, 973 F. Supp. 2d at 573–74). Therefore, the court will deny the Motion without prejudice to renewal following discovery.

### IV.   <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 14) will be denied.

February 14, 2025                         /s/ _____
                                          Julie R. Rubin
                                          United States District Judge